UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:            BRUCE BERNARD NOLTE,                    Case No. 14-36676-KRH
                                                          Chapter 11
                        Debtor.

_____

MT TECHNOLOGY ENTERPRISES, LLC
and RONALD D. TRICE,

                  Plaintiffs,

v.                                                        APN 15-03130

BRUCE BERNARD NOLTE,

                  Defendant.

_____


**MEMORANDUM OPINION**


        Before the Court is (i) the complaint (the "Complaint") filed by plaintiff MT Technology

Enterprises LLC ("MT") against the defendant, Bruce Bernard Nolte ("Nolte"), initiating this

Adversary Proceeding (Case No. 15-03130-KRH, the "Adversary Proceeding"), and (ii) the

objection of Nolte to the proof of claim filed by MT in Nolte's underlying Bankruptcy Case.[1]

The Complaint sought to have MT's $8,843,411.80 claim asserted against Nolte declared non-

dischargeable under § 523(a)(6) of the Bankruptcy Code.  On October 26, 2015, the Court

commenced a trial in the Adversary Proceeding that was scheduled to proceed for five days.[2]

_____

[1] An objection to the allowance of a claim may be included in an Adversary Proceeding. Fed. R. Bankr. P. 3007(b).
*See* Nolte Answer at ¶ 15.  On October 23, 2015, Nolte filed a separate objection to the proof of claim filed by MT
in the underlying bankruptcy case on the grounds that MT could not prove damages even if liability on the claim
that MT filed was established.  The Court considered the separate objection to the proof of claim in the context of
the Adversary Proceeding, as the damages issues presented in each were identical.

[2] At the outset of the trial, the Court announced its decision to deny MT's Motion for Summary Judgment that had
been filed in the Adversary Proceeding.

After considering the evidence presented during the trial in the context of the applicable statutory authority, the case law, the pleadings, and the arguments of counsel, the Court ruled that: (1) Nolte was collaterally estopped from re-litigating the issue of liability on MT's state court judgment; (2) no determination had been made in the state court regarding the amount of MT's damage claim; (3) MT failed to prove at trial that it had suffered any damages arising out of the state court judgment; (4) Nolte was not collaterally estopped from contesting the issue of dischargeability of MT's claim under § 523(a)(6) of the Bankruptcy Code; and (5) MT failed to carry the burden of proof necessary to establish that it's claim for liability founded on the state court judgment was nondischargeable.  Accordingly, the Court announced that it would enter judgment in the Adversary Proceeding in favor of Nolte.  This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[3]

## Jurisdiction and Venue

A complaint to determine the dischargability of a debt must be brought as an adversary proceeding under the Bankruptcy Code.  *See* Fed. R. Bankr. P. 7001(6).  An objection to the allowance of a Proof of Claim, while normally a contested matter, may be included in an adversary proceeding.  *See* Fed. R. Bankr. P. 3007(b).  The Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) & (I).  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.  The plaintiff has consented to the jurisdiction of this Court by commencing this Adversary Proceeding and by filing its Proof of Claim herein.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

Plaintiff has alleged in paragraph one of the Complaint that this matter is a core proceeding. Defendant has admitted this allegation in his answer.  Any *Stern*[4] objections have been waived by the parties, and the Court has the authority to enter final judgment in this proceeding.  *See Wellness Int'l. Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015).

### The State Court Proceedings

MT's dischargeability Complaint arises out of state court litigation that preceded Nolte's Bankruptcy Case.  In December 2010, a jury trial was conducted in the Circuit Court for the City of Richmond, Virginia (the "Trial Court").  In that state court case, MT sued Cristol, LLC ("Cristol"), and four of its members, one of whom was Nolte, alleging claims arising out of a failed business venture under Virginia's business conspiracy statute.[5]  *See* Va. Code Ann. § 18.2–499 (West 2015).  During the course of the State Court Litigation, MT propounded certain discovery requests to the state court defendants to which the state court defendants did not timely respond.  The Trial Court imposed sanctions under Rule 4:12(b) of the Supreme Court of Virginia (the "Virginia Supreme Court"), which resulted in an order prohibiting the state court defendants from opposing the plaintiff's claims.

The only issue left for the jury was the amount of damages to which MT was entitled. The Trial Court prevented the state court defendants from cross-examining any of the plaintiff's witnesses during the damages phase of the trial.  The jury returned a verdict in favor of the plaintiff against the state court defendants, including Nolte, in the amount of $6,636,468, plus

---

[4]  *See Stern v. Marshall*, 131 S. Ct. 2594 (2011) (holding that Article III of the Constitution forbids bankruptcy courts from entering a final judgment on claims that seek only to "augment" the bankruptcy estate and would otherwise exist without regard to any bankruptcy proceeding).

[5]  *MT Technology Enterprises, LLC v. Christopher G. Miller, et al.* and later re-styled *MT Technology Enterprises, LLC v. Bruce B. Nolte, et al.*, Case No. CL09-2485 (the "State Court Litigation").

interest at the legal rate, calculated from the date of the filing of the State Court Litigation, plus costs.

The Virginia Supreme Court awarded the state court defendants an appeal.  On June 7, 2012, the Virginia Supreme Court affirmed the trial court's ruling as to liability, but remanded the issue of damages for reconsideration.  *See Nolte v. MT Tech. Enters., LLC (Nolte I)*, 726 S.E.2d 339 (Va. 2012).

The second trial on damages resulted in a mistrial.  On December 17 and 18, 2013, a third trial was held on damages in the Trial Court.  The limited evidence offered by the plaintiff at the third trial consisted of reading the prior testimony of the plaintiff's damages expert and of one other witness from the transcript of the first trial.  Again the state court defendants were not allowed to introduce any evidence, nor were they permitted to cross-examine the proffered witnesses.  The case went to the jury, which once again returned a verdict in favor of the plaintiff.  The Trial Court entered judgment plus interest from June 2, 2009, the date the State Court Litigation was filed.

On December 15, 2014, the Virginia Supreme Court granted a Certificate of Appeal on six assignments of error.[6]  On May 8, 2015, the Virginia Supreme Court reversed the Trial Court's judgment on damages and remanded the matter back to the Trial Court, requiring that the "parties begin anew."  *Nolte v. MT Tech. Enters., LLC (Nolte II)*, No. 140979, 2015 Va. Lexis 94 at *5 (Va. May 8, 2015).

### The Bankruptcy Court Proceedings

On December 16, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the underlying "Bankruptcy Case").  On March 27, 2015,

---

[6] A seventh assignment of error was withdrawn relating to attorney fees.

Ronald Trice ("Trice") and MT filed the Complaint initiating this Adversary Proceeding. The Complaint was prepared and filed by the law firms of Fisher Clarke PLLC located in Chesterfield County, Virginia, and Stewart Occhipinti LLP located in New York, New York (the "Occhipinti Firm").[7]

On April 22, 2015, MT filed its proof of claim (designated as claim number 2 in the Court's claims docketing system) in the Bankruptcy Case (the "MT Proof of Claim"). The MT Proof of Claim was predicated upon the prior state court judgment. Trice filed a separate claim (designated as number 3 in the Court's claims docketing system) in the Bankruptcy Case (the "Trice Proof of Claim"). The Trice Proof of Claim mirrored a state court lawsuit Trice had filed in the Circuit Court of Chesterfield County, Virginia, which had not yet gone to trial.

On May 6, 2015, this Court conducted its initial pretrial conference (the "Pretrial Conference") in this Adversary Proceeding as noticed by the summons plaintiffs had issued to and duly served upon the defendant. Nolte did appear at the Pretrial Conference with his counsel. Plaintiffs also appeared, but they appeared without the benefit of counsel.[8] Trice spoke

---

[7] Neither Douglass Hayden Fisher nor Frank S. Occhipinti, the two counsel who signed the Complaint, had been admitted to practice before the Court when the Adversary Proceeding was initiated. *See* Local Bankruptcy Rule 2090-1(F); *see also* Local Bankruptcy Rule 5005-1(B) ("Any attorney offering a petition, pleading or other document other than a request for notices under FRBP 2002(g), for filing on behalf of a client, must be a member in good standing of the bar of this Court.").

Leonard E. Starr, III ("Starr"), who had previously appeared and filed a number of pleadings on behalf of MT in the underlying Bankruptcy Case and who is a member in good standing of the bar of this Court, abruptly withdrew from the representation of MT three days before the Complaint was filed. In Starr's Motion for leave to withdraw (in which MT joined), it was represented to the Court that MT had "engaged counsel Frank S. Occhipinti, Esq. of Stewart Occhipinti LLP ("Occhipinti") out of New York City to undertake lead representation in this case. It is expected that local counsel will be engaged by MT and a *pro hac vice* motion filed to admit Occhipinti to practice before this court in this case." Based on this representation, an order subsequently granting Starr's motion to withdraw was entered on April 8, 2015.

No motion to admit Frank S. Occhipinti, Esq. has ever been filed in the Adversary Proceeding or in the underlying Bankruptcy Case. The Court, in a miscellaneous proceeding totally unrelated to Nolte's Bankruptcy Case, denied the application of Douglass Hayden Fisher to qualify as an attorney for the United States Bankruptcy Court for the Eastern District of Virginia. *See* Order, *In re Fisher*, No. 15-00301 (Bankr. E.D. Va. May 11, 2015), ECF No. 14.

[8] Notwithstanding that the Occhipinti Firm is listed on the Complaint and in certain of the pleadings filed in the Bankruptcy Case and in the Adversary Proceeding as counsel for MT, no member of the Occhipinti Firm has ever appeared before this Court in the Bankruptcy Case or the Adversary Proceeding.

at the Pretrial Conference on his own behalf, and he attempted to speak on behalf of MT.[9]  At the

Pretrial Conference, the Court advised Trice that he was permitted to represent himself as a *pro*

*se* litigant but that he could not represent MT, as it was a corporation.  *See* Local Bankruptcy

Rule 9010-1.[10]  Trice was instructed, in no uncertain terms, "there needs to be counsel for the

corporation."  Pretrial Conference Transcript at 5, *MT Tech. Enters., LLC v. Nolte (In re Nolte)*,

No. 15-03130, (Bankr. E.D. Va. Oct. 8, 2015), ECF No. 21.  During the Pretrial Conference, the

Court reserved five days for the trial, beginning October 26, 2015.  On May 8, 2015, the Court

subsequently issued a Pretrial Order in the Adversary Proceeding, which (among other things)

established a schedule for conducting the Adversary Proceeding and confirmed the trial dates.

On May 7, 2015, Trice, proceeding *pro se*, filed a motion seeking to dismiss Nolte's

underlying Bankruptcy Case (the "Motion to Dismiss Bankruptcy Case").  On June 3, 2015, the

Court conducted an evidentiary hearing to consider Trice's Motion to Dismiss Bankruptcy Case.

At the hearing, the Court encouraged Trice once again to retain counsel on his own behalf, and it

reminded Trice of the imperative need for MT to retain counsel.  On July 21, 2015, the Court

entered an order denying Trice's Motion to Dismiss Bankruptcy Case.

On August 10, 2015, Nolte served Trice with the defendant's first set of interrogatories,

first request for production of documents, and first requests for admission (the "Trice

Discovery").  On the same day, Nolte served MT with the defendant's first set of interrogatories,

---

[9] The Court understands that Trice may be a licensed as a patent attorney in Washington DC.  He is not, however, a
member of the Bar of this Court.  *See* Local Bankruptcy Rule 2090-1.

[10] Local Rule 9010-1 reflects time honored, well established, black letter law that a corporation cannot represent
itself in a legal proceeding.  *See* 1 William Blackstone, *Commentaries* *465 ("It must always appear by attorney; for
it cannot appear in person, being, as sir Edward Coke says, invisible, and existing only in intendment and
consideration of law."); *see also Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 801 (1824) ("A corporation can
only appear by its attorney.").

first request for production of documents, and first requests for admission (the "MT Discovery").

Counsel for Nolte received an incomplete, partial response to the Trice Discovery from Trice,

*pro se*, on September 21, 2015.

On September 28, 2015, Jonathan M. Arthur of Thomas H. Roberts & Associates, PC and

Franklin D. McFadden, Jr., of Hull Street Law each filed separately a notice of appearance dated

September 25, 2015 on behalf of MT (together, "Arthur and McFadden").  MT thereupon served

untimely responses to the MT Discovery (the "MT Discovery Response").  On September 28,

2015, MT filed a motion to approve withdrawing admissions (the "Motion to Withdraw

Admissions").[11]  Also on September 28, 2015, MT filed a motion for summary judgment (the

"Motion for Summary Judgment").[12]  MT then moved on October 6, 2015, for a continuance of

the trial.  The motion to continue was denied by order entered October 16, 2015 on the grounds

MT had failed to establish good cause for a continuance.

On October 9, 2015, Nolte timely tendered his proposed exhibits and exhibit list pursuant

to the Pretrial Order.  Because MT filed no objections to the same, pursuant to this Court's

Pretrial Order, all of Nolte's exhibits stand as admitted into evidence.[13]  MT untimely filed its

---

[11] The Court denied the Motion to Withdraw Admissions finding that the "presentation on the merits" would be
subverted by allowing MT to withdraw the disputed admissions.  *Harrison Higgins, Inc. v. AT & T Commc'ns, Inc.*,
697 F. Supp. 220, 222 (E.D. Va. 1988).  The Court did not find the admissions to be of any substantial consequence.
Furthermore, it was not convinced that there were proper grounds to support the motion.  It appeared that MT was
trying to use the ensuing delay between the denial of Fisher's application and the retention of Arthur and McFadden
to gain an unfair litigation advantage.  A party cannot manufacture its own cause.  MT had been strongly encouraged
on numerous occasions throughout the pendency of the Adversary Proceeding to retain counsel.  Indeed, five
different lawyers have placed their names on pleadings for MT.  Citing Fisher's disqualification at this late juncture
of the Adversary Proceeding as its reason for the requested relief appeared disingenuous.

[12] The Court's Pretrial Order entered in this Adversary Proceeding on May 8, 2015, required all motions for
summary judgment to be filed no later than 30 days prior to the trial date.  The Court considered MT's Motion for
Summary Judgment even though it was tardily filed.

[13] Included among the admitted exhibits is an Expert Report prepared by Eric M. Massell, who is a senior manager
in the Restructuring and Litigation Services Practice of Protiviti, Inc., an international risk management and business
consulting firm.  The Expert Report concludes, among other things, that any calculation of damage to MT would be
purely speculative.

proposed exhibits on October 13, 2015.  Nolte filed numerous detailed objections thereto, all of

which the Court reserved for trial.[14]

On October 15, 2015, Nolte disclosed a rebuttal expert witness.[15]  Also on October 15,

2015, the parties entered into a stipulation of (1) voluntary full dismissal solely as to plaintiff

Ronald D. Trice and (2) voluntary partial dismissal as to plaintiff MT Technology Enterprises,

LLC (the "Stipulation of Dismissal").  Trice dismissed all of the counts he had brought against

Nolte in the Adversary Proceeding.  The result of the Stipulation of Dismissal from Trice's

standpoint was that he was no longer a party to the Adversary Proceeding.  The Stipulation of

Dismissal also resulted in the dismissal of all all but one count brought by MT.  Stipulation of

Dismissal, *In re Nolte*, No. 15-03130 (Bankr. E.D. Va. Oct. 15, 2015), ECF No. 29.  MT further

clarified in its MT Discovery Response and in its Motion for Summary Judgment that it was only

pursuing nondischargeability on its one remaining count under 11 U.S.C. § 523(a)(6).

At the beginning of trial, MT orally moved once again for a continuance.[16]  This time the

stated cause for the continuance was the unavailability of a witness on the first day of the five-

day trial allegedly due to a medical complication associated with the pregnancy of the wife of the

---

[14] Nolte also filed a separate Motion in Limine under Federal Rule of Bankruptcy Procedure 7037 to limit the evidence MT would be allowed to present at the trial.  A party who intends to offer evidence at trial must comply with the disclosure requirements and participate in the discovery process provided by the applicable Federal Rules of Bankruptcy Procedure.  *See Wilkins v. Montgomery*, 751 F.3d 214, 221 (4th Cir. 2014).  "A trial court has wide latitude in imposing sanctions on parties who fail to comply with pretrial orders and procedural rules."  *In re Hatton*, 204 B.R. 477, 485 (E.D. Va. 1997) (citing *Atlas Truck Leasing, Inc. v. First NH Banks, Inc.*, 808 F.2d 902, 903 (1st Cir. 1987)).  The Court refused to permit MT to simply ignore its previous MT Discovery Response, finding that to do so would create prejudicial surprise and disrupt the trial.  *See S. States Rack & Fixture Inc. v. Sherman-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).  Ultimately five of MT's proposed exhibits were admitted at trial – Plaintiff's Exhibits 34, 35, 36, 37 and 44.

[15] While MT had not designated any expert witness or produced any expert report as required by the Court's Pretrial Order and by Bankruptcy Rule 7026, counsel for Nolte filed the rebuttal designation out of an abundance of caution in case some probative evidence of damage was introduced at trial.  None in fact ever was.

[16] Local Bankruptcy Rule 7016-1(D) states that "parties and their counsel are bound by the dates specified in [the scheduling order] and no extensions or continuances thereof shall be granted in the absence of a showing of good cause."  *See also* LBR 9013-1(J).

witness that had arisen just three hours prior to the trial.  MT proffered no evidence in its oral

motion for a continuance as to the materiality of the witness to its case.  *See United States v.

Clinger*, 681 F.2d 221, 223 (4th Cir. 1982) (setting forth a five-factor test in evaluating a

decision to deny a continuance).  The attendance of the witness had not been subpoenaed.[17]  MT

had identified seven other witnesses on its list of witnesses filed with the Court.  The Court

found that the absence of one of MT's eight witnesses on the first day of a trial scheduled to last

for five days was not good cause for delay.  As all of the other parties were present for the trial

and ready to proceed, the Court ruled that a continuance of the trial at that juncture was not

warranted.[18]  Accordingly, the Court denied the oral motion and ordered counsel to proceed with

the trial.

## The Motion for Summary Judgment

MT sought to have this Court grant summary judgment on its Complaint objecting to the

discharge of its allowed claim pursuant to Federal Rule of Bankruptcy Procedure 7056.

Summary judgment is appropriate only where there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 250 (1986).  A fact is material if it may affect the outcome of the litigation.  *Id.* at

248.  The Fourth Circuit has held that "[g]enuineness means that the evidence must create fair

doubt; wholly speculative assertions will not suffice.  A trial . . . exists to resolve what

reasonable minds would recognize as real factual disputes."  *Ross v. Commc'n Satellite Corp.*,

---

[17] Counsel for MT conceded that MT had neither issued nor caused to be issued any subpoena for the witness to attend the trial.

[18] The Court heard no other request for continuance following the initial request for continuance by the plaintiffs on the morning of the trial.

759 F.2d 355, 364 (4th Cir. 1985) (citing *Cole v. Cole*, 633 F.2d 1083, 1089 (4th Cir.1980); *Atl. States Constr. Co. v. Robert E. Lee & Co.*, 406 F.2d 827, 829 (4th Cir.1969)).

The burden of demonstrating that there exists no genuine dispute of any material fact rests with MT as the moving party. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, the Court must examine the underlying facts in the light most favorable to Nolte as the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

MT sought summary judgment on the grounds that the doctrine of collateral estoppel precluded Nolte from relitigating the dischargeability issue in this Court. Nolte had already been found liable under the Virginia business conspiracy statute in the State Court Litigation. *See* Va. Code. Ann. § 18.2–499, 500 (West 2015). MT argues that the state court finding of liability under the Virginia business conspiracy statute estopps Nolte from relitigating the dischargeability of the claim under § 523(a)(6) of the Bankruptcy Code.

It is well settled that a state court judgment can collaterally bar litigation of the same issue in an adversary proceeding. *See Pahlavi v. Ansari* (*In re Ansari)*, 113 F.3d 17, 19 (4th Cir. 1997), *cert. denied*, 552 U.S. 914 (1997). This Court has previously recognized that there are five elements necessary to establish collateral estoppel in Virginia:

> First, the issue litigated must have been essential to the prior judgment. Second, the prior action must have resulted in a valid and final judgment against the party sought to be precluded in the present action. Third, the parties or privies in both proceedings must be the same. Fourth, there must be mutuality between the parties. Finally, the factual issue litigated actually must have been litigated in the prior action.

*Reed v. Owens* (*In re Owens*), 449 B.R. 239, 249-50 (Bankr. E.D. Va. 2011) (citing *E.L. Hamm & Assocs., Inc. v. Sparrow (In re Sparrow)*, 306 B.R. 812, 825 (Bankr. E.D. Va. 2003)). The Fourth Circuit has admonished that "the determination that an issue was actually litigated and

necessary to the judgment must be made with *particular care*." *Combs v. Richardson*, 838 F.2d 112, 113 (4th Cir. 1988) (citing *Long v. West*, 794 F.2d 928 (4th Cir. 1986) (emphasis added)).

This Court has taken judicial notice of both *Nolte I* and *Nolte II* and has found that those State Supreme Court decisions preclude this Court from revisiting the issue of Nolte's underlying liability. However, that determination of liability in the state court did not address all of the elements that are required to find a debt nondischargeable under § 523(a)(6) of the Bankruptcy Code.

In *Duncan v. Duncan*, 448 F.3d 725 (4th Cir. 2006), the Fourth Circuit addressed a procedural pattern remarkably similar to that presented in the case at bar. The plaintiff in *Duncan* had obtained a state court wrongful death judgment and sought to have that same judgment declared nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code. The Fourth Circuit reviewed whether the Chapter 7 debtor was precluded from litigating the nondischargeability issue in the ensuing adversary proceeding. *Duncan*, 448 F.3d. at 727. The Fourth Circuit held that the standard for wrongful death liability was lower than the standard for nondischargeability under § 523(a)(6). *See id.* at 729-30. The Fourth Circuit made clear that the liability in the state court must be specifically based on the identical issue in the adversary proceeding for collateral estoppel to apply. *Id.* For collateral estoppel to apply, the legal standards must be identical and the finder of fact must expressly indicate that liability was found under the identical legal standard and not a lesser standard. *See id.* at 730. Pertinent to this analysis is whether or not the state court finding of liability under Va. Code. § 18.2–499 and 500 was identical to the standard under § 523(a)(6). Even if the two issues are identical, the state court's finding of liability must be clear. There must be no possibility of a non-identical finding

of liability.  *See Duncan*, 448 F.3d at 730 (refusing to apply collateral estoppel when a jury could have found liability under an identical or non-identical standard).

Section 523(a)(6) of the Bankruptcy Code provides that a discharge under 11 U.S.C. § 1141 does not discharge a debtor from a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  Nolte was found to be liable under §§ 18.2–499 and 500 of the Virginia statutory business conspiracy statute. Virginia Code § 18.2–499 provides that:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor.  Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

Va. Code Ann. § 18.2–499 (West 2015).  MT argues that this court must apply the doctrine of collateral estoppel because different forms of the words "willful" and "malicious" appear in both § 18.2–499 of the Virginia Code and § 523(a)(6) of the Bankruptcy Code.  Analysis of the two statutes reveals, however, that the legal standards governing the employment of the terms "malicious" and "willfully" are not identical in both statutes.

The Supreme Court of the United States has instructed that § 523(a)(6) is *only applicable* to "acts done with the actual intent to cause injury."  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1995).  Merely "negligent, grossly negligent, or reckless" behavior does not meet that standard. *Duncan*, 448 F.3d at 729 (citing *Geiger*, 523 U.S. at 62-64); *see also Isaacson v. Isaacson*, 478 B.R. 763, 781 (Bankr. E.D. Va. 2012).  Importantly, and intricately intertwined with the collateral estoppel analysis, a debtor who engages in an intentional act does not necessarily engage in a willful and malicious act for purposes of § 523(a)(6).  *Duncan*, 448 F.3d at 729.

12

"[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to an injury." *Id.* (quoting *Geiger*, 523 U.S. at 61 (emphasis in original)).

Virginia case law is clear that § 18.2–499 merely "require[s] proof of legal malice" and that the convicted party need only act "intentionally, purposefully, and without lawful justification." *Commercial Bus. Systems*, *Inc. v. BellSouth Servs., Inc.*, 453 S.E.2d 261, 266-67 (Va. 1995); *see Ford Motor Co. v. Nat'l Indemnity Co.*, 972 F. Supp. 2d 850, 861 (E.D. Va. 2013). "Sections 18.2–499 and –500 do not require a plaintiff to prove that a conspirator's primary and overriding purpose is to injure another in his trade or business." *Galaxy Computer Servs. v. Baker*, 325 B.R. 544, 555 (E.D. Va. 2005) (citing *Advanced Marine Enters., Inc. v. PRC Inc.*, 501 S.E.2d 148, 154 (Va. 1998)). Section 18.2–499 does not require that all conspirators act with legal malice; liability can be established so long as a single conspirator acted with legal malice. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 527 (4th Cir. 1997).

The Court finds that the "legal malice" standard applicable to § 18.2–499 of the Virginia Code is not identical to the "willful and malicious" standard required under § 523(a)(6) of the Bankruptcy Code. Section 523(a)(6) sets a higher bar for the finding of "willful and malicious" than the Virginia statute for a finding of "willfully and maliciously." The Fourth Circuit in *Duncan* stressed that the "issues must be identical for collateral estoppel to apply . . ." and the two issues presented in the case at bar are not identical. *Duncan*, 448 F.3d at 730; *see also In re Jenkins*, 258 B.R. 251, 268-69 (Bankr. N.D. Ala. 2006) (holding that liability under an Alabama statute that did not require an "intent to injure" could not be used for collateral estoppel purposes under § 523(a)(6)).

13

But even if the two statutes had identical standards of intent, this Court would still find that the doctrine of collateral estoppel did not apply, as there has been no clear finding of "malicious" and "willful" intent under § 18.2–499.  Liability can arise under § 18.2–499 even without the existence of legal malice.  *See Multi-Channel TV Cable Co*, 108 F.3d 552 at 527 ("§ 18.2-499(B) does not require that the co-conspirator act with legal malice.").  This Court has no evidence whether the trial court found that Nolte's liability was predicated upon the actual requisite intent.  This genuine issue of material fact, therefore, remains in dispute.

For all these reasons the Court ruled at the outset of the trial that the Motion for Summary Judgment had to be denied.  The Court found that there were issues of material fact that remained to be resolved.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.  As the standard under Virginia Code § 18.2–499 and 11 U.S.C. § 523(a)(6) are not analogous to one another, the doctrine of collateral estoppel is inapplicable to this Adversary Proceeding.[19]  MT was left to prove at trial that Nolte acted deliberately with the actual intent to cause it injury and that MT suffered damages as a result.

### The Trial

I.    THE ALLOWED AMOUNT OF THE MT PROOF OF CLAIM

The MT Proof of Claim arising out of the "[c]ourt Judgment for intention [sic] torts and conspiracy" was filed in the amount of $8,843,411.80.  Nolte filed an objection to MT's claim (the "Claim Objection") in accordance with Bankruptcy Rule 3007(a) on the grounds that the tort

---

[19] MT raised the specter of the *Rooker-Feldman* doctrine, arguing that Nolte was inappropriately seeking to have the Court reverse the decision of the state court on constitutional grounds.  The *Rooker-Feldman* doctrine stems from the seminal cases of *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 253 U.S. 413 (1929).  This Court's ruling that collateral estoppel is not applicable in this proceeding is made without having to upset or ignore any aspect of the state court rulings.  Indeed, there is no reason to address the *Rooker-Feldman* issue at all.

liability had not been liquidated and there were no damages stemming therefrom.  The Claim

Objection asked that the MT Proof of Claim be disallowed in its entirety.[20]

This Court must give full faith and credit to state court judgments.  28 U.S.C. § 1738.

"The validity of a creditor's claim is determined by the rules of state law."  *Grogan v. Garner*,

498 U.S 279, 283 (1991).  A bankruptcy court must allow a claim based on a state court

judgment so long as: 1) state law would afford the judgment preclusive effect; and 2) Congress

has not crafted an exception.  *See In re Genesys Data Tech., Inc.*, 204 F.3d 124, 128 (4th Cir.

2000).  Thus, if Virginia law would give preclusive effect to MT's state court judgment and no

other exception applies, this Court must allow the MT Proof of Claim.  *Id.*

Virginia's preclusion law clearly applies to the state Trial Court's finding of liability on

the part of Nolte.  *See Vuyyuru v. Jadhav*, No. 3:10BCVB173, 2011 WL 1483725 at *5 (E.D.

Va. Apr. 19, 2011).[21]  Nolte had the opportunity to litigate his liability on the MT claim in the

Trial Court, and he lost.  Nolte cannot now re-litigate the issue of liability in this Court.

Although the Trial Court's decision was appealed twice to the Virginia Supreme Court, the

Virginia Supreme Court affirmed the Trial Court's ruling as to liability in both instances.  In

remanding the case the first time for a new trial on damages the Virginia Supreme Court was

explicit on this point.  "We will reverse the judgment of the trial court in part and remand the

case for further proceedings on damages only. . . .  [O]n remand the defendants may not

challenge liability for recovery of any damages . . . ."  *Nolte I*, 726 S.E.2d at 349; *see also Nolte*

---

[20] The Defendant also denied that he was indebted to MT in any amount in his answer to the Complaint in the Adversary Proceeding.  The Court considered the Claim Objection in the context of the Adversary Proceeding as the damages issue presented in each was identical.  *See supra* note 1.

[21] "In Virginia, a claim raised in a second action is barred by failure to raise the claim in a first action, where (1) the same defendants, or defendants in privity with one another, defend both actions, (2) the second "claim or cause of action" arises out of the same conduct, transaction, or occurrence as did the first, (3) the plaintiff could have raised the claim in the first action, and (4) a final judgment on the merits decided the first action.  *See* Va. Sup. Ct. R. 1:6(a) (2006); *Martin–Bangura v. Va. Dept. of Mental Health*, 640 F. Supp. 2d 729, 738 (E.D. Va. 2009)."  *Vuyyuru*, 2011 WL 1483725 at *5.

15

*II*, 2015 Va Lexis 94 at *4-5 (case remanded solely "for a new trial on damages"). This Court

finds that there is a final judgment on the merits as to liability. All the elements of Virginia's *res*

*judicata* law have been satisfied. The Court is aware of no exception that would prevent the

preclusive effect of the state court's ruling as to liability. *See In re Genesys Data Tech., Inc.*,

204 F.3d at 128.

There has been no final judgment, however, as to the damages component of MT's claim.

This Court cannot give preclusive effect to the State Court Litigation as to damages for the same

reason it must give preclusive effect to the State Court Litigation as to liability. There has been

no final judgment on the merits. In *Nolte II*, the Virginia Supreme Court was clear that it was

vacating the prior ruling on damages and instructing the parties to "begin anew" with a new

damages trial. *See Nolte II*, 2015 Va. Lexis 94 at *3-4. Following the remand in *Nolte II*, no

further state court proceedings have taken place on account of the Bankruptcy Case. *See* 11

U.S.C. § 362.[22] Without a final judgment on damages in the state court, this Court must

undertake its own analysis of MT's damages. It is incumbent upon this Court to determine the

allowed amount of the MT Proof of Claim. *See* 11 U.S.C. § 502.

Section 502(b) of the Bankruptcy Code provides that "if such objection to a claim is

made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the

date of the filing of the petition." 11 U.S.C § 502(b); Fed. R. Bankr. P. 3007.[23] No evidence was

---

[22] The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or
*continuation* . . . of a judicial . . . proceeding against the debtor that was . . . commenced before the commencement
of the case." 11 U.S.C. § 362(a) (emphasis added).

[23] A proof of claim constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P.
3001(f). A party objecting to the proof of claim must present sufficient evidence to overcome the prima facie
validity of a properly and timely filed proof of claim. *See, e.g., C-4 Media Cable S., L.P. v. Reds T.V. & Cable, Inc.*
(*In re C-4 Media Cable S., L.P.*), 150 B.R. 374, 377 (Bankr. E.D. Va. 1992). In the instant case, there was no
dispute that MT's tort claim had never been liquidated. Nolte objected to the allowance of the MT Proof of Claim
on that basis. Once sufficient information such as that advanced by Nolte has been set forth to overcome the initial
presumption, the burden shifts back to the creditor to prove the amount of its claim by a preponderance of the

offered by MT at trial with regard to the nature or the amount of the damages that MT allegedly suffered.[24]

The Court was left to fabricate the damages component of MT's Complaint out of whole cloth.  The Court was asked to take judicial notice of the prior testimony of MT's damages expert from the transcript of the first state court trial.  But the Court declined to do so.[25]  MT has utterly failed to meet its burden of proof.  The Court finds that MT has not shown that it was damaged as a result of the liability established by the State Court Litigation.  The allowed amount of the MT Proof of Claim is zero.  Accordingly, the MT Proof of Claim will be disallowed in its entirety.

II.    THE DISCHARGEABILITY OF THE MT PROOF OF CLAIM UNDER 523(A)(6).

Even if the allowed amount of the MT Proof of Claim had some actual value, Nolte's liability on that claim is, nevertheless, dischargeable in his Chapter 11 Bankruptcy Case.[26]  MT failed at trial to meet the burden of proof necessary to demonstrate the elements required to prove the debt nondischargeable under § 523(a)(6) of the Bankruptcy Code.

---

evidence.  *In re Flemming*, No. 08-30200, 2008 WL 4736269 at *1 (Bankr. E.D. Va. Oct. 15, 2008).

[24] Pursuant to paragraph 6 of this Court's Pretrial Order and pursuant to Federal Rule of Bankruptcy Procedure 7026(a)(2) the parties were required to disclose expert testimony sixty days prior to trial.  MT never disclosed the intention to call any expert witness.  Nor did it attempt to call an expert to testify at trial.  The evidence presented at trial was that MT was a start-up company with no business operations.  There was no form of evidence, expert or otherwise, that showed some loss flowed to MT as a result of Nolte's alleged willful and malicious conduct.

[25] Not only was the transcript not self-authenticating under Federal Rule of Evidence 902, inadmissible hearsay under Federal Rules of Evidence 801 and 802, and not the appropriate subject of a fact of which a court should take judicial notice under Federal Rule of Evidence 201, but the same offer of evidence had also been considered and rejected twice before by the Supreme Court of Virginia.  *See Nolte I*, 726 S.E.2d at 347-48 (vacating the Trial Court's ruling on damages because the Trial Court abused its discretion when it prohibited cross-examination by the defendants during the damages presentation).

[26] Generally, unless the Court were to order otherwise for cause, confirmation of a plan in an individual Chapter 11 case does not discharge any debt provided for in the plan until the Court grants the discharge upon completion of all payments under the plan.  *See* 11 U.S.C. § 1141(d)(5)(A).  No Chapter 11 plan has yet been confirmed in the Bankruptcy Case.

The objecting creditor in a dischargeability proceeding under §523(a)(6) bears the burden of proving by a preponderance of the evidence[27] "that (1) there was an injury to the plaintiff or his property, (2) such injury was the result of an act of the debtor, and (3) the act was both willful and malicious."  *Isaacson v. Isaacson*, 478 B.R. 763, 781 (Bankr. E.D. Va. 2012) (citations omitted).  Bankruptcy Code § 523(a)(6)

> applies only to 'acts done with the actual intent to cause injury.'  *Kawaauhau*, 523 U.S. at 61.  The United States Supreme Court has rejected a broad reading of Section 523(a)(6) that would include 'situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor.'  *Id.* at 62.  Thus, a plaintiff must demonstrate that the debtor possessed the requisite intent as to both the act and the resultant injury.  *See id.* at 61.

*Isaacson*, 478 B.R. at 781.   Section 523(a)(6) of the Bankruptcy Code only applies to acts performed with the "actual intent to cause injury."  *Geiger*, 523 U.S. 61.  The Fourth Circuit has further defined willfulness for purposes of § 523(a)(6) as an act taken "with a substantial certainty that harm would result or a subjective motive to cause harm."  *Parsons v. Parks (In re Parks)*, 91 Fed. App'x 817, 819 (4th Cir. 2003). As the Court has noted:

> Debtor's subjective mind set is central to the inquiry as to whether debtor acted deliberately in knowing disregard of a creditor's rights in property.  In fact, a plaintiff creditor can even establish malice on an implied basis from a showing of debtor's behavior, as well as a presentation of the surrounding circumstances.  What is required is that plaintiff prove that debtor's injurious act was done deliberately, intentionally and with knowing disregard for plaintiff's rights.

*Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670-71 (Bankr. E.D. Va. 2001) (internal citations omitted).   In this light, MT was required to demonstrate: first, that Nolte performed some act with the specific intent to cause damage to MT or with a substantial certainty that harm would result to MT; and second, that the intentional act of Nolte caused damage to MT.

---

[27] *Grogan v. Garner*, 498 U.S. 279, 287 (1991) ("Congress intended the preponderance standard to apply to the discharge exceptions . . . .").

18

The Court finds that MT failed to prove its case by the preponderance of the evidence. *Grogan*, 498 U.S. at 287–88.  MT failed to present any evidence that Nolte performed, engaged in, directed, or otherwise carried out any act with the intent to willfully and maliciously harm MT.[28]  MT presented no evidence that Nolte ever had the specific intent to harm MT.  MT failed to show that Nolte undertook any act with the substantial certainty that MT would be harmed as a result thereof.  No subjective motive to cause harm has been established.  In fact, MT submitted no evidence that Nolte committed any act whatsoever that was directed at MT.  The Court finds that Nolte did not act in a willful or malicious fashion towards MT.[29]  The Court concludes that the judgment resulting from the State Court Litigation establishing Nolte's liability to MT is dischargeable in his Chapter 11 case.

## Conclusion

For the reasons set forth herein, the State Court Litigation has no preclusive affect as to the amount of the MT Proof of Claim or as to the dischargeability of that claim.  The doctrine of collateral estoppel is inapplicable with regard to those two issues.  The Court has determined the allowed amount of the MT Proof of Claim to be zero dollars.  Therefore, the MT Proof of Claim must be disallowed in its entirety.  Finally, Nolte's liability on the MT Proof of Claim can be

---

[28] MT called only two of the eight witnesses it had previously designated for trial.  MT's first witness was an indirect employee of Cristol.  He testified that Nolte was the chairman of Cristol's Board of Directors (the "Cristol Board").  While MT's first witness had misgivings about the work environment created by the Cristol Board and about the dilution of his own ownership percentage in Cristol, the witness never worked for MT, was not aware of any damages Cristol may have caused to MT, and had no knowledge of any dealings between Nolte and MT.

  MT's second witness was Nolte.  Nolte sat on the Cristol Board with Trice and John Mango ("Mango").  Nolte testified that Trice was patent counsel for Cristol and Mango was its Chief Scientist.  Cristol was a start-up company that was engaged in the development of a new ballistic fiber.  Trice and Mango were close friends and together they owned MT.  Nolte testified that he sought to remove Trice from the Cristol Board after it was discovered that Trice had not registered the new ballistic fiber patents in Cristol's name, but rather had registered the patents in his own name.  Nolte further testified that Trice was seeking to sell the patents to a third party in violation of the fiduciary duty Trice owed to Cristol.  Nolte testified that in his capacity as chairman of the Cristol Board, he acted to ensure that Mango would not leave Cristol in the event Trice was removed from the company.  Nolte also testified that he had no dealings with MT, and he believed MT to be a shell corporation with no business operations.

[29] Even if MT had been able to prove that Nolte had acted with intent to harm MT, MT still did not prove that it suffered any damages as a result of anything Nolte did to it.

discharged in Nolte's Chapter 11 Bankruptcy Case, as MT has not proved the elements necessary
to find the claim nondischargeable under § 523(a)(6) of the Bankruptcy Code.

A separate order shall issue.

ENTERED: _Nov 25 2015_

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

ENTERED ON DOCKET: Nov 25 2015